ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

CARLOS P. RODRIGUEZ,

    Plaintiff,

vs.

JOSE M. VAZQUEZ, Warden;
Mrs. WALKER, Nurse;
Mr. COOPERSMITH, P.A., and
Dr. BURGOS, Individually and in
their official capacities,

    Defendants.

CIVIL ACTION NO.: CV206-265

## MAGISTRATE JUDGE'S ORDER AND REPORT AND RECOMMENDATION

Plaintiff, an inmate currently incarcerated at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"), has filed an action pursuant to 28 U.S.C. § 1331 and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), contesting certain conditions of his confinement. Defendants Vazquez and Walker ("Defendants") filed a Motion to Dismiss or in the Alternative for Summary Judgment (Doc. No. 26), which the Court construes as a

Motion for Summary Judgment[1], and Plaintiff filed a Response (Doc. No. 31).[2] For the reasons which follow, Defendants' Motion for Summary Judgment should be **DENIED**.

## STATEMENT OF THE CASE

Plaintiff asserts that Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Specifically, Plaintiff alleges that he suffered a stroke while incarcerated at FCI Jesup and that when two of his fellow inmates took him to medical and explained his situation, Defendants Walker and Coopersmith refused to allow him to see a doctor. Instead, Plaintiff contends, Defendant Walker placed him in segregation. Plaintiff asserts that he subsequently suffered another stroke and that Defendants Vazquez and Burgos refused to provide him with treatment despite his requests.

In their Motion, Defendants contend only that they are entitled to summary judgment because Plaintiff failed to exhaust his administrative remedies before initiating this action. Conversely, Plaintiff contends that he has exhausted his administrative remedies.

## STANDARD OF DETERMINATION

Summary judgment should be granted only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The procedure for disposing of a summary judgment motion is well

---

[1] If "matters outside the pleading are presented to and not excluded by the court", the "motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. P. 12(b).

[2] Defendants subsequently filed a Reply to Plaintiff's Response (Doc. No. 34), Plaintiff filed an additional Response (Doc. No. 36) and an Affidavit (Doc. No. 37), Defendants filed another Reply (Doc. No. 38), Plaintiff filed another Response (Doc. No. 39), and Defendants filed yet another Response (Doc. No. 40).

established. The Court may grant summary judgment to a party when the evidence demonstrates that the nonmoving party has failed to establish an essential element of his case. The party moving for summary judgment bears the initial burden of meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970). In applying this standard, a court should view the evidence and all factual inferences in the light most favorable to the party opposing the motion. All reasonable doubts regarding the facts should be resolved in favor of the nonmovant. Adickes, 398 U.S. at 157, 90 S. Ct. at 1608.

Once the moving party has met this initial burden, the burden shifts to the opposing party to show that a genuine issue of material fact exists. Celotex Corp. v. Catrell, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The opposing party may not simply rest upon mere allegations or denials of the pleadings. Rather, the nonmoving party must make a sufficient showing of facts to establish the existence of an essential element to his case on which he will bear the burden of proof at trial. Id.; Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989). To oppose the motion sufficiently after the movant has met his initial burden, the nonmoving party must point to evidence in the record or present additional evidence in the form of affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure. Riley v. Newton, 94 F.3d 632, 639 (11th Cir. 1996). If the record presents factual issues, the Court must deny the motion and proceed to trial. Herzog v. Castle Rock Entertainment, 193 F.3d 1241, 1246 (11th Cir. 1999). Summary judgment is also inappropriate where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. Id.

Furthermore, this Court has previously recognized that in accordance with "Congress's intent to curtail inmate litigation, coupled with the Eleventh Circuit's policy bent . . . irrespective of whether the issue is reached under Rule 12(b)(1), 12(b)(6), or 56, exhaustion constitutes a preliminary issue for which no jury trial right exists, and therefore judges can and should make credibility determinations on exhaustion-excusal issues." Priester v. Rich, 457 F. Supp. 2d 1369, 1377 (S.D. Ga. 2006).

## DISCUSSION AND CITATION OF AUTHORITY

Where Congress explicitly mandates, federal prisoners seeking relief under Bivens must first exhaust inmate grievance procedures before filing suit in federal court. Porter v. Nussle, 534 U.S. 516, 524, 122 S. Ct. 983, 988, 152 L. Ed. 2d 12 (2002); McCarthy v. Madigan, 503 U.S. 140, 144, 112 S. Ct. 1081, 1086, 117 L. Ed. 2d 291 (1992). 42 U.S.C. § 1997e(a) states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter v. Nussle, 534 U.S. 516, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002), the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter at 523, 122 S. Ct. at 987. Thus, even when the prisoner is seeking relief not provided for under the grievance process, exhaustion is still a prerequisite to his filing suit. Id. at 524, 122 S. Ct. at 988; Booth v. Churner, 532 U.S. 731, 732, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001). It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Furthermore, "[t]he Bureau of Prisons has established regulations that set forth the procedures that a prisoner must follow before seeking relief from a district court." Gonzalez v. United States, 959 F.2d 211, 212 (11th Cir. 1992). According to these regulations, an inmate can file a grievance with the Warden ("BP-9"), and the Warden has 20 days to respond. 28 C.F.R. § 542.15(a). If the inmate is not satisfied with the Warden's response, he may file an appeal with the Regional Director ("BP-10"). Id. Finally, if the inmate is not satisfied with the Regional Director's response, he can file an appeal with the General Counsel for the Federal Bureau of Prisons ("BP-11"). Id.

A review of the documents submitted by the parties indicates that Plaintiff initially sought informal resolution of his complaint as required by 28 C.F.R. § 542.13(a) by filing an Inmate Request to Staff. (Doc. No. 31, p. 5). This document, addressed to "Mr. Ruiz [Assistance of Warden]" and dated December 8, 2004, complains of a "situation" with the medical department concerning symptoms Plaintiff was suffering and Mr. Ruiz's apparent referral of Plaintiff to Dr. Burgos. Plaintiff complains that he was "denied the proper medical attention." The form itself is unsigned by any GSP staff member, but the record also contains a January 5, 2005 "Memorandum From Henry Ruiz, Associate Warden," addressed to Plaintiff and regarding his "Inmate Request to Staff Member in which [Plaintiff] claim[s] inadequate medical care." (Doc. No. 31, p. 6). Therein, Mr. Ruiz advises Plaintiff that his medical records indicate that he has received adequate medical care while at FCI Jesup. Mr. Ruiz concludes by denying Plaintiff's request. Defendants concede that this Memorandum does "appear to respond to the [Inmate Request to Staff] dated December 8, 2004." (Doc. No. 38, p. 4). Thus, at this point

Plaintiff completed the prerequisite of seeking informal resolution of his complaint before initiating the formal grievance procedure as required by BOP regulations.

It is at the next step in the administrative review process that Plaintiff and Defendants begin to disagree as to the facts. Plaintiff asserts that on December 10, 2004, he obtained a Request for Administrative Review form ("BP-9") from his Unit Counselor R. Sheffield. (Doc. No. 39, p. 3). Plaintiff contends that on December 16, 2004, he returned the completed BP-9 to Counselor Sheffield. Indeed, the record contains two BP-9s from Plaintiff, dated December 16, 2004, detailing his complaints about the incidents of alleged deliberate indifference to his serious medical needs. (Doc. No. 31, pp. 7-11). Plaintiff contends that after he received no reply to the BP-9 from the Warden, he appealed the implied denial of his request as required by BOP regulations. Conversely, Defendants assert that the BOP has no record of any BP-9 having been submitted, and that because the documents Plaintiff submits are not signed by BOP staff, there is no proof that Plaintiff completed the first step of the administrative review process. Plaintiff asserts that his submission of the BP-9 is evidenced by the fact that he referenced such in his appeals of what he interpreted as an implied denial. (Doc. No. 36, p. 3).

Next, Plaintiff submits two completed Regional Administrative Remedy Appeals ("BP-10"s), dated March 16, 2005, in which he again describes his factual contentions and asserts that he filed a BP-9 on the matter which was not responded to. (Doc. No. 31, pp. 13, 15). These BP-10s are not signed as having been received by any BOP staff member, yet the record contains two "Rejection Notices" dated March 25, 2005 from the Administrative Remedy Coordinator informing Plaintiff that his regional appeals

were rejected. (Doc. No. 31, pp. 12, 14). One regional appeal was rejected because Plaintiff allegedly did not attempt or did not provide evidence of informal resolution of the complaint and because he failed to file a BP-9 at the institutional level. (Doc. No. 31, p. 12). The second BP-10 was rejected because more than one issue was raised and because the information provided was not sufficiently specific. (Doc. No. 31, p. 14). Notably, there are no instructions to Plaintiff regarding resubmission of the appeals as is required by 28 C.F.R. § 542.17.

Next, Plaintiff submits a completed appeal to the Central Office ("BP-11") dated May 5, 2005. (Doc. No. 31, p. 18). The BP-11 is the third step in the exhaustion procedure required by 28 C.F.R. § 542.15. Again, no BOP staff member signed the receipt on the appeal, but on May 19, 2005 the appeal was rejected, this time on the bases that Plaintiff raised more than one issue and that he failed to provide specific information allowing staff to consider the appeal. (Doc. No. 31, p. 17). Again, there are no instructions contained in the rejection advising Plaintiff of the opportunity or procedure for resubmission of the appeal as required by 28 C.F.R. § 542.17. On October 25, 2006, Plaintiff filed the instant civil action.

Based on the evidence before this Court, the undersigned concludes that Plaintiff has satisfied the PLRA's exhaustion requirement. The evidence is clear that Plaintiff first pursued informal resolution of his medical complaint, and that he filed appeals at the second and third steps of the BOP's exhaustion procedure. The dispute is over whether Plaintiff filed his BP-9 at the first step in the three-step process, and Plaintiff's version of the events is simply more persuasive. Defendants' position appears to be that because the BP-9 completed by Plaintiff is not signed as received by a staff

member, it was not actually submitted by Plaintiff. However, *none* of Plaintiff's remedy submissions were signed as received by any staff member, and yet every other submission was responded to by staff. Quite simply, it is clear that the presence of a staff signature – or lack thereof – does not evidence whether a remedy request has been submitted. If it is the practice of staff to sign for the receipt of remedy requests, clearly that practice was not followed in Plaintiff's case.

Furthermore, Defendants contend that Plaintiff would still have failed to exhaust even assuming he submitted his BP-9 because he failed to resubmit his appeals after they were rejected. However, the BOP's regulations clearly require that when the Coordinator rejects a request or appeal:

> . . . the inmate shall be provided a written notice . . . explaining the reason for rejection. If the defect on which the rejection is based is correctable, the notice shall inform the inmate of a reasonable time extension within which to correct the defect and resubmit the Request or Appeal.

28 C.F.R. § 542.17(b). Plaintiff received written notice of the rejections of his appeals, including the reasons therefore, but he was not informed of a reasonable time extension within which to correct the defects. The notices include no instruction on resubmission of the appeals. Thus, upon receipt of the rejections, Plaintiff moved on to subsection (c), which states that where the rejection of an appeal is made without the opportunity to correct and resubmit, the inmate may appeal to the next level. 28 C.F.R. § 542.17(c). After the first rejection, Plaintiff indeed appealed to the next level, and after that appeal was rejected, he filed his Complaint with this Court.

It is clear that Plaintiff pursued and exhausted the administrative remedies which were available to him. It is equally clear that the BOP at times throughout the process failed to properly comply with its own rules governing the grievance procedure.

Accordingly, it is my **RECOMMENDATION** that Defendants' Motion for Summary Judgment (Doc. No. 26) be **DENIED**. Plaintiff's Motion Requesting an Evidentiary Hearing (Doc. No. 41) is **DENIED**.

So **ORDERED** and **REPORTED** and **RECOMMENDED** this 29th day of May, 2007.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE