FILED
U.S. DISTRICT COURT
BRUNSWICK DIV.
2008 JUN 17 PM 3:55
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

CARLOS P. RODRIGUEZ,

  Plaintiff,

vs.

JOSE M. VAZQUEZ, Warden
and Mrs. WALKER, Nurse;

  Defendants.

CIVIL ACTION NO.: CV206-265

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate currently incarcerated at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"), has filed an action pursuant to 28 U.S.C. § 1331 and Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971), contesting certain conditions of his confinement. Defendant Walker filed a Motion to Dismiss or in the Alternative for Summary Judgment, which the Court construes as a Motion for Summary Judgment[1], and Plaintiff filed a Response.[2] For the reasons which follow, Defendant Walker's Motion for Summary Judgment should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff asserts that Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment right to be free from cruel and

---

[1] If "matters outside the pleading are presented to and not excluded by the court", the "motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. P. 12(b).

[2] Plaintiff filed an Affidavit in support of his Response (Doc. No. 66) and a Motion to Strike Defendants' Affidavit (Doc. No. 67). Defendants subsequently filed a Reply to Plaintiff's Response (Doc. No. 69) and a Response to Plaintiff's Motion to Strike Defendants' Affidavit (Doc. No. 70); Plaintiff filed another Response. (Doc. No. 72).

unusual punishment. Specifically, Plaintiff alleges that while incarcerated at FCI Jesup, he felt physical symptoms that led him to believe a stroke was imminent and that when two of his fellow inmates took him to medical and explained his situation, Defendant Walker and Physician's Assistant Coopersmith refused to allow him to see a doctor. Instead, Plaintiff contends, Defendant Walker placed him in segregation, and he subsequently suffered a stroke.

In her Motion, Defendant Walker contends that she is entitled to summary judgment because she was not deliberately indifferent to Plaintiff's serious medical needs and asserts that Plaintiff was provided with adequate medical care. Finally, Defendant Walker asserts she is entitled to qualified immunity.

## STANDARD OF REVIEW

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004). An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could cause a rational trier of fact to find in favor of the nonmoving party. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 1260 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

The moving party bears the burden of establishing that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law. Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no genuine issues of material fact. Hickson, 357 F.3d at 1260 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). When the nonmoving party would have the burden of proof at trial, the moving party may discharge her burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. Id. In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Acevado v. First Nat'l Bank, 357 F. 3d 1244, 1247 (11th Cir. 2004).

## DISCUSSION AND CITATION OF AUTHORITY

Defendant Walker asserts she had no reason to believe Plaintiff had a serious medical need, which required immediate medical treatment when he visited the Health Services Department ("Medical") at FCI Jesup on November 30, 2004. Defendant Walker contends this assertion is supported by the medical opinions of both Dr. Burgos and Physician's Assistant Coopersmith. Defendant Walker further contends that, in light of Plaintiff's conduct and the lack of a medical emergency, no reasonable nurse would have believed her conduct would violate a constitutional right.

Plaintiff asserts that Defendant Walker was deliberately indifferent to his serious medical needs. Plaintiff alleges Defendant Walker denied his request to see Dr. Burgos

when he arrived at Medical seeking medical attention on November 30, 2004. Plaintiff further alleges that Defendant Walker placed him in segregation because of his request to see Dr. Burgos. Plaintiff finally contends Defendant Walker is not entitled to qualified immunity because she deliberately ignored his serious medical needs.

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates. This duty to safeguard also embodies the principle expressed by the Court in Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976), forbidding prison officials from demonstrating deliberate indifference to the serious medical needs of inmates. Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed.2d 811 (1994).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106, 97 S. Ct. at 292. Like any deliberate indifference claim, the Estelle analysis incorporates both an objective and a subjective component. Hill v. DeKalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).[3] The objective component is "contextual and responsive to 'contemporary standards of decency.'" Hudson v. McMillian, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992) (quoting Estelle, 429 U.S. at 103, 97 S. Ct. at 290). Under that standard, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious'." Hill, 40 F.3d at 1186 (quoting Hudson, 503 U.S. at 9, 112 S. Ct. at 1000). In the Eleventh Circuit, a medical need is serious if it "has been diagnosed by a

---

[3] Although Hill was a § 1983 case, courts generally apply § 1983 cases to Bivens cases. Abella v. Rubino, 63 F. 3d 1063, 1065 (11th Cir. 1995).

AO 72A
(Rev. 8/82)

physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill, 40 F.3d 1187 (internal citations omitted). As to the subjective component, the Eleventh Circuit "has consistently held that knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference." Hill, 40 F.3d at 1186 (quoting Mandel v. Doe, 888 F.2d 783, 788 (11th Cir. 1989)). To demonstrate deliberate indifference in the medical context, a defendant must have intentionally delayed access to medical care for such a period as to constitute the unnecessary and wanton infliction of pain. Adams v. Poag, 61 F.3d 1537, 1543-44 (11th Cir. 1995). Negligence in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Estelle, at 106, 97 S. Ct. at 292.

Defendant Walker submitted a Declaration in support of her Motion. In the Declaration, Defendant Walker avers that she is a Registered Nurse licensed to practice in the state of Georgia and has been employed as a Registered Nurse by FCI Jesup since 2001. (Doc. No. 59, ¶ 3). Defendant Walker describes her duties at FCI Jesup to include making initial evaluations of patients, screening incoming inmates, communicating her assessments to physicians or physician's assistants, initiating transfers to facilities outside the prison when necessary, and assisting with the operation of Medical. (Id. at ¶ 4). Defendant Walker alleges that she became aware of Plaintiff's presence at Medical on November 30, 2004, and she intervened when she noticed Plaintiff arguing loudly with Physician's Assistant Coopersmith. (Id. at ¶ 5). Defendant Walker then alleges she heard Plaintiff tell Physician's Assistant Coopersmith that, earlier in the day, Dr. Burgos had instructed Plaintiff to return to

Medical at 2:30 p.m. to review his lab work. Defendant Walker noted that Physician's Assistant Coopersmith had more medical training than she did, a greater opportunity than she had to evaluate Plaintiff's condition, and Coopersmith took no action to further evaluate Plaintiff. (Id. at ¶ 18). Defendant Walker asserted that she never heard Plaintiff say he was in need of immediate medical assistance and, while he was angry, he did not appear to be in acute distress. (Id. at ¶¶ 7, 8). Defendant Walker then informed Plaintiff that he could return after the 2:30 p.m. recall and ordered him back to his unit for the recall. (Id. at ¶ 7). Defendant Walker avers that during this encounter, Plaintiff put his hand in her face and told her to "hush". Defendant Walker asserts that she feared for her safety and radioed compound officers for assistance and subsequently wrote up an Incident Report in accordance with Bureau of Prisons' ("BOP") regulations. (Id. at ¶¶ 10, 11). Defendant Walker emphasizes that she did not place Plaintiff in segregation, nor did she have the authority to do so. The decision to place Plaintiff in segregation was made by other personnel. (Id. at ¶ 12).

Defendant Walker stated that she evaluated Plaintiff on December 5, 2004, when an officer reported a potential need for Plaintiff to receive medical assistance. After evaluating Plaintiff and contacting Dr. Burgos, Defendant Walker arranged for Plaintiff to be transferred in a prompt manner to the local hospital for further evaluation. (Id. at ¶¶ 13, 14). Defendant Walker asserts that she would have performed the same medical evaluation she performed on December 5, 2004, had Plaintiff exhibited similar symptoms on November 30, 2004. (Id. at ¶ 16). Defendant Walker further asserts that she does not recall whether she knew of Plaintiff's stroke history on November 30, 2004; however, feels that it is unlikely. (Id. at ¶ 17).

Dr. Burgos submitted an affidavit in support of the Motions in this case. (Gov't Ex. A). Dr. Burgos asserts he was the Chief Medical Officer and Clinical Director at FCI Jesup from July 2000 until June 2005. Dr. Burgos avers that Plaintiff was a chronic care patient while he worked at FCI Jesup and as such, he was familiar with Plaintiff's care and treatment. (Id. at ¶ 4). Dr. Burgos noted Plaintiff's long medical history, including symptoms similar to those he was allegedly suffering on November 30, 2004. (Id. at ¶¶ 7-13). Dr. Burgos asserts that on the afternoon of November 30, 2004, he was leaving his office when he noticed Plaintiff arguing with Defendant Walker and Physician's Assistant Coopersmith. Dr. Burgos felt that Plaintiff was angry, and he informed Plaintiff that he could return to his cell and come back to Medical if he felt the need to do so. Dr. Burgos asserts that, at no time, did Plaintiff indicate that he was in medical distress, needed medical assistance, or felt that he was having a stroke. Dr. Burgos further asserts that Plaintiff was alert, oriented, coherent, angry, and ambulated normally when led away to segregation. (Id. at ¶ 25). Dr. Burgos finally asserts that, in his professional opinion, no action or inaction on the part of health-care providers at FCI Jesup was the proximate cause of the stroke suffered by Plaintiff. (Id. at ¶ 40).

Plaintiff alleges that on November 30, 2004, at around 2:30 p.m., his speech became blurred, his mouth twisted, and his entire left side was numb. (Doc. No. 1, ¶ 9). Plaintiff further alleges that he was helped to Medical by two other inmates and was met upon his arrival by Defendants Walker and Coopersmith, whereupon Defendant Walker instructed him to return to his cell for recall. Plaintiff asserts that he and another inmate explained his need for medical attention and requested to see Dr. Burgos. (Id. at ¶ 10). Plaintiff avers that as he was about to leave Medical, Defendant Walker called him back

AO 72A
(Rev. 8/82)

7

and placed him in segregation. (Id. at ¶ 11). Plaintiff alleges that on or about December 2, 2004, he suffered a stroke and was incapacitated on his entire left side. (Id. at ¶ 12).

The evidence before the Court reveals that Plaintiff entered Medical on November 30, 2004, at approximately 2:30 p.m. There is some dispute as to whether Plaintiff informed Defendant Walker of his alleged physical symptoms. However, even assuming, arguendo, that Defendant Walker was informed of Plaintiff's alleged medical condition, it was not unreasonable for her to deny Plaintiff immediate medical treatment. The evidence reveals that when Plaintiff entered Medical on November 30, 2004, he was seen by both Physician's Assistant Coopersmith and Defendant Walker. Neither of these trained medical professionals diagnosed Plaintiff with having physical symptoms which would have led them to believe he was in need of immediate medical assistance. Dr. Burgos' affidavit averring that he saw Plaintiff on the afternoon of November 30, 2004, and came to the same medical conclusion as Defendant Walker and Physician's Assistant Coopersmith further supports the conclusion that Plaintiff has failed to establish it was unreasonable for Defendant Walker to deny Plaintiff immediate medical assistance. Plaintiff has failed to show the existence of a genuine issue of material fact as to whether Defendant Walker was deliberately indifferent to his serious medical needs. Plaintiff has provided no evidence to establish that even if he had a need for immediate medical care on November 30, 2004, that Defendant Walker had knowledge of this need or that she intentionally delayed his access to medical care. Even assuming, arguendo, that Defendant Walker was negligent in diagnosing Plaintiff's medical condition, her actions do not rise to an Eighth Amendment violation. Defendant Walker is entitled to summary judgment in her favor.

It is unnecessary to address the remaining grounds of Defendant Walker's Motion.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant Walker's Motion for Summary Judgment be **GRANTED** and Plaintiff's claims against Defendant Walker be **DISMISSED**.

**SO REPORTED** and **RECOMMENDED**, this 17th day of June, 2008.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE